81 F.3d 168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard HAKA, Plaintiff-Appellant,
v.
COUNTY OF SACRAMENTO; Robert E. Kolgard, Probation Officer,
Defendants-Appellees.
 No. 94-16221.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 14, 1996.[1]
Decided April 3, 1996.
 
 1
 Before: THOMPSON and KLEINFELD, Circuit Judges, and WILSON, District Judge.[2]
 
 MEMORANDUM[3]
 I. BACKGROUND
 
 2
 Appellant Richard Haka ("Haka") was employed by Appellee the County of Sacramento ("County") as a probation assistant and later as a deputy probation officer. At all relevant times of his employment, he was assigned to the Boys' Ranch facility. After this court held in Bratt v. County of Los Angeles, 912 F.2d 1066 (9th Cir.1990), that Los Angeles probation officers were covered by the Fair Labor Standards Act, County began treating employees such as Haka as covered by the FLSA. Because Bratt held that covered employees were entitled to time and a half overtime benefits retroactive for a certain prior time period, the Sacramento County Probation Association brought this action on behalf of many of its members. These plaintiffs alleged that they had worked overtime within the relevant time period without being compensated therefor.
 
 
 3
 Jurisdiction was founded upon 28 U.S.C. § 1331, in that plaintiffs' claims arose under the Fair Labor Standards Act. We have jurisdiction of this appeal under 28 U.S.C. § 1291, in that the order appealed from was the final decision of the district court.
 
 
 4
 After discovery, 38 plaintiffs remained. Because the plaintiffs had been treated as exempt during the relevant time period, they generally did not possess documentary evidence of overtime work. On April 21, 1994, the district court issued a final pretrial order which set forth the procedures to be followed at trial. In relevant part, this order provided that:
 
 
 5
 All parties have agreed that plaintiffs' evidence of the amount of overtime actually worked will be offered by the written proffer of each plaintiff containing the number of hours of overtime claimed and the basis for the claim, e.g., written time records or, if an estimate, the basis for the estimate. Any written time records relied upon must be attached to the plaintiffs' written proffer.
 
 
 6
 Appellee's Brief at 2-3.
 
 
 7
 Trial began on April 28, 1991, and was to the court sitting without a jury. On that date, the court asked whether there were any objections to or requests to modify the final pretrial order. None were made. It is unclear whether any oral testimony was taken at trial (none is apparent), but it is clear that no oral testimony was taken of Haka or any of the County's witnesses with respect to Haka's claim. The plaintiffs' evidence was submitted in the form of "witness statements" in accordance with the final pretrial order. The defendants' evidence consisted of written offers of proof.
 
 A. Haka's Evidence
 
 8
 Haka was represented by counsel in the proceedings in the district court. The only evidence presented in support of Haka's claim was a three-page witness statement. Haka's statement described his job tasks and hours during different time periods and estimated the amount of his uncompensated overtime for each period. It stated that Haka worked as a probation assistant from April 1988 (the beginning of the relevant period for retroactive overtime) until November 1990, and that he worked as a deputy probation officer from December 1990 until the time of trial. Haka's total claim for overtime came to 953 hours.
 
 
 9
 A significant portion of Haka's claimed overtime hours were spent driving a van from Juvenile Hall to Boys' Ranch, a task which Haka alleged to be required as part of his job duties. Haka's statement alleged that he drove the van on a daily basis until March 25, 1989. Haka Statement at 2. It then alleged that from February 1989 through September 1989, he drove the van once per week. Then, in September 1989, Haka began "working a different schedule," a day shift that did not involve driving the van. Id.
 
 
 10
 Haka also alleged that he was forced to work overtime in order to perform several other tasks over different time periods, and that from November 1990 through February 12, 1991, he worked 30 hours of uncompensated overtime per week. During that time period, Haka alleged that he "felt threatened, abused, and ridiculed" and that he "was given the dirtiest and the worst jobs at the facility," including having to "conduct clandestine activities on his fellow employees." Id. at 3.
 
 B. County's Evidence
 
 11
 The only evidence submitted by the defendants was a three-page offer of proof setting forth the testimony of Jim Thornton, Jerry Chase, and David Spencer, who were Haka's supervisors. They stated that Haka was not required to drive the van, but that he (as well as some other employees) chose to do so in order to avoid wear and tear on his own car. They countered Haka's claim that he performed work-related functions while driving the van (such as counseling wards) by testifying that such work only occurred during a time period when Haka was driving the van during his shift, and thus did not constitute overtime.
 
 
 12
 Defendants further stated that "Haka resigned from the department on March 9, 1989, and was rehired August 13, 1989 so that his claim at page two paragraph three where he claims overtime for this period is also incorrect for this reason." Defendants' Offer of Proof at 22.
 
 
 13
 Defendants disputed some of Haka's other assertions regarding the work he was required to perform, and denied categorically Haka's allegations relating to the period from November 1990 through February 12, 1991, stating that Haka "has a creative imagination." Defendants' Offer of Proof at 23.
 
 II. THE DISTRICT COURT DECISION
 
 14
 The district court filed a memorandum of decision on May 26, 1994. It found retroactive overtime, in varying amounts, for 28 plaintiffs, and denied recovery to four plaintiffs, including Haka. The other six plaintiffs were dismissed during trial. Haka's is the only claim before us on this appeal.
 
 
 15
 The following is the district court's discussion, in its entirety, of Haka's claim:
 
 
 16
 Richard Haka alleges that in February and March 1989, like [three other plaintiffs], he was required to drive a County vehicle between the Boys' Ranch and Juvenile Hall before and after each regular shift (40 hours). He also claims that from April through September 1989, he was required to drive the County vehicle one time each week (30 hours). Haka alleges that during these trips he transported supplies, equipment and wards and that the vehicle was used at the Boys' Ranch during the day.
 
 
 17
 Haka's supervisors, Jim Thornton, Jerry Chase and David Spencer, testified that Haka resigned from the County on March 9, 1989, and was not rehired until August 13, 1989. They testified that Haka had ample time to complete his work assignments during the regular work week and denied that they required him to work at home although Chase admitted knowledge that Haka had worked at home at least on one occasion because Chase 'had to go to Haka's home to pick ... up' a report that Haka completed at home.
 
 
 18
 Haka also claims that during the period September 1989 through March 1990, his supervisor, Jerry Chase, required him to take two files home each week to review and organize and that this work required 32 hours of overtime. In addition, from September 1989 through March 1990, Haka alleges that Chase and another supervisor, Jim Thornton, required Haka to write reports about release juveniles at home, requiring an additional 126 hours of overtime. Also from March 1990 through July 1990, Haka alleges that Chase required Haka to work at home to complete victim restitution reports, requiring yet an additional 35 hours. Haka claims he worked overtime during the period July through November 1990 but does not allege that any supervisors knew or should have known that he did. Haka claims that from November 1990 through February 12, 1991, he 'was required' to work 30 overtime hours each week (300 hours). Finally, from June 3, 1991, through December 3, 1991, Haka claims that he worked 30 hours overtime per month writing reports at home and that his supervisors knew it (180 hours). Haka's total claim is for 70 hours spent driving a County vehicle and 675 other overtime hours that his supervisors knew he worked.
 
 
 19
 Haka's claim to overtime compensation during a period for which there is evidence that he was not employed by the County precludes indulging any favorable inference to assist him in meeting his burden of proof and, accordingly, the court finds that Haka is not entitled to any recovery.
 
 
 20
 Memorandum of Decision at 28-29.
 
 
 21
 In other words, Haka's right to all of the claimed overtime was disputed. Because of the total lack of documentary evidence, the court's task was to weigh the credibility of Haka's witness statement against the credibility of County's statement in order to determine whether Haka had met his burden of proving by a preponderance of the evidence that he was entitled to any of the claimed overtime. The district court found Haka's witness statement, with respect to at least some of his claimed overtime, to be undercut by the County's undisputed evidence that he was not employed by County during the relevant time period. As a result, the district court did not credit Haka's witness statement with respect to any of his claimed overtime. Because Haka submitted no other evidence besides his witness statement, the district court concluded that he had not met his burden of proof.
 
 III. DISCUSSION
 A. Haka's Argument on Appeal
 
 22
 On this appeal (unlike at trial below), Haka is not represented by counsel. Haka's informal brief states:
 
 
 23
 I believe the District Court erred when it dismissed my entire claim based on the county's information that I was not a county employee during part of my claim period. It is true that effective March 25, 1989, I resigned my status as a permanent county employee and withdrew my retirement money. However, I continued to work for the Probation Dept. in the classification of on-call Probation Assistant until my reinstatement in August of 1989. During these few months as an on-call, I was also required to drive the Ranch van before and after my shift without compensation, but only occasionally due to varying work schedule. It is for this reason that I included these months in my claim. I was required to work overtime without pay throughout the entire time period covered by my claim.
 
 
 24
 Once I reinstated to permanent county employee status in August of 1989, I continued to work as a Probation Assistant until I was promoted to Probation Officer in November of 1990. Thereafter, I was demoted to Probation Assistant in April of 1991 because I failed my Probationary period. Subsequently, I was again promoted to Probation Officer in June of 1991 and I have continued as a Probation Officer since that time. I was not transferred out of institutions until February of 1994.
 
 
 25
 The facts of my case are readily discoverable as they may be proven by payroll records, tax records, and internal documentations. The County has conceded that Probation Assistants and Probation Officers assigned to institutions are covered by the Fair Labor Standards Act.
 
 
 26
 Appellant's Informal Brief at 2.
 
 B. County's Response
 
 27
 County states the question presented on appeal as "whether the court below erred in denying relief to appellant Haka on the basis that his testimony is less credible than that of his supervisors who dispute his claim."
 
 
 28
 County argues that in his informal brief, Haka states as facts allegations which were not presented to the district court, and that these allegations must be disregarded under F.R.A.P. 10(a) & (e).
 
 C. Analysis
 
 29
 We review the district court's determination of the credibility of the evidence for clear error. Fed.R.Civ.P. 52(a).
 
 
 30
 We agree with County that Haka's argument on appeal is barred by F.R.A.P. 10(e). It may well be true that Haka worked on an on-call basis during the time in which he was not formally employed by County. Haka may even have worked some overtime during that time period. But Haka presented no evidence in the district court regarding a gap in his employment or a change in status. Instead, Haka simply omitted any mention of the seemingly relevant fact that in March 1989 he resigned his employment and was not rehired until August 1989. Considering that Haka claimed overtime for a time period in which there was evidence that he was not employed by County, it was not clearly erroneous for the district court to find that Haka's witness statement lacked credibility. And considering that because of the total lack of documentary evidence, Haka's entire case depended on his credibility in claiming overtime based solely on after-the-fact estimates, the court did not err by denying all recovery on the ground that Haka failed to meet his burden of persuading the court he had worked any uncompensated overtime. Notably, despite being represented by counsel, Haka did not attempt to deny or explain County's evidence.
 
 
 31
 Therefore, Haka's attempt to do so on appeal is barred by F.R.A.P. 10(e) because it relies on allegations that were not part of the record in the district court. E.g., United States v. Walker, 601 F.2d 1051, 1054 (9th Cir.1979) ("Rule 10(e) cannot be used to add to or enlarge the record on appeal to include material which was not before the district court"); United States v. Garcia, 997 F.2d 1273, 1278 (9th Cir.1993). F.R.A.P. 10(e)'s provision for correction of the record on appeal when "anything material to either party is omitted from the record by error or accident or is misstated therein," is inapplicable. The record does not misstate what occurred in the district court, and Haka's explanation of his employment status between March and August 1989 was not omitted because of clerical error or an inadvertent mistake by the court. "We are here concerned only with the record before the trial judge when his decision was made." Walker, 601 F.2d at 1055. See also 16 C.A. Wright et al., Fed.Prac. & Proc. § 3956, at 386-88 (1977) & 1995 supplement thereto § 3956, at 721-745.
 
 IV. CONCLUSION
 
 32
 Based on the record before the district court, it was not clearly erroneous for that court to determine that Haka failed to meet his burden of proving that he had worked uncompensated overtime. The district court's decision denying Haka's claim for overtime pay is, therefore, AFFIRMED.
 
 
 
 [1]
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 [2]
 Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 [3]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3